705 So.2d 1 (1997)
Broderick Wendell MONLYN, Appellant,
v.
STATE of Florida, Appellee.
No. 82779.
Supreme Court of Florida.
October 9, 1997.
Rehearing Denied January 22, 1998.
*2 Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Broderick Wendell Monlyn appeals his convictions of first-degree murder and other crimes and the sentence of death imposed for the crime of murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Monlyn was convicted of first-degree murder, armed robbery, and armed kidnapping on November 2, 1993. Following the jury's recommendation, the judge imposed a death sentence. The court found five aggravating circumstances: prior violent felony (robbery); commission during the course of or attempt to commit robbery or kidnapping; commission for financial gain; that the murder was heinous, atrocious, or cruel; and that the murder was cold, calculated, and premeditated. The court found no statutory mitigation. As nonstatutory mitigation, the court found that Monlyn was affectionate and considerate toward his family, had been helpful to others, and had made a good adjustment to prison life. The court also noted Monlyn's good behavior at trial. The court found that *3 the aggravating circumstances outweighed the mitigation.
Monlyn lived across the road from the victim, Alton Watson. Monlyn had previously fished on Watson's property, and on one occasion Watson ordered him off the property with a rifle. Later, when Monlyn was in prison, he told an inmate that he was going to kill Watson. He told another inmate  Johnny Craddock that he would kill the first person he saw in order to get a ride. He also stated that he intended to rob the victim and steal his truck and money.
Monlyn escaped from prison on October 6, 1992. He stole some clothes and money and a shotgun from his uncle. He spent a night in Watson's barn hiding from the police. Monlyn encountered Watson in the barn the next morning. Monlyn said that Watson surprised him and that both men grabbed for the shotgun and struggled over it. Monlyn testified that he was trying to get away when he grabbed the gun and hit Watson with it. He said they struggled from the barn into the yard until Watson stopped attacking him. At that point, Monlyn said, he tied Watson's feet together, gagged him, dragged him into the barn, and took his truck. Watson's wallet, containing no money, was found next to the body. A friend who had let Monlyn stay in her trailer called the police, and he was arrested.
Watson's body had over thirty blunt injury wounds, about ten of them defensive. The medical examiner described the bindings at trial, and testified that the cause of death was multiple blunt impact to the head.
Monlyn raises thirteen issues. He argues that it was (1) error to allow the medical examiner's testimony that Watson was still alive and suffered more head blows after being bound and gagged; (2) error to overrule Monlyn's objection when he was asked on cross-examination about the inconsistency between his testimony that he bit the victim and the medical examiner's testimony that there were only blunt injuries to the victim; (3) error not to grant a mistrial after the questions as to why Monlyn had not told anyone about his fight with victim and whether he realized that the victim would die without medical attention; (4) error to admit the victim's wife's testimony that the victim usually carried $200 to $300 in cash, (5) error to deny a motion for mistrial during the State's guilt-phase closing argument; (6) error to admit Johnny Craddock's testimony regarding Monlyn's statements made weeks before the homicides; (7) error to refuse to give Monlyn's requested circumstantial evidence instructions; (8) error to give the standard reasonable doubt instruction; (9) error to give an unconstitutionally vague instruction on the cold, calculated, and premeditated aggravator; (10) error to find that the murder was cold, calculated, and premeditated (CCP); (11) error to give the standard heinous, atrocious, or cruel instruction; (12) error not to give Monlyn's requested mitigation instruction; and (13) error not to instruct against doubling the pecuniary gain and robbery aggravators. After conducting an independent review of the entire record, we have found that there is competent and substantial evidence supporting the convictions and sentence. Turning to Monlyn's arguments, we find no reversible error and affirm the convictions and death sentence.
Monlyn's first argument, that it was error to allow the medical examiner's testimony that the victim was still alive and suffered more blows to the head after being bound and gagged, is without merit. The medical examiner testified that because there would be no reason to bind and gag a dead person, and two of the blows would have killed the victim within minutes, some of the blows were therefore inflicted after the victim was bound and gagged. Monlyn argues that this was a common-sense conclusion that should have been left to the jury. The state cites Terry v. State, 668 So.2d 954 (Fla.1996), where we reiterated: "The determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge whose decision will not be reversed absent a clear showing of error." Id at 960. We find no abuse of discretion in allowing the testimony: the medical examiner was qualified to testify as to the nature and extent of the blows. Even if there was error here, it would clearly have been harmless. The same information came in through Monlyn's own testimony. Monlyn was asked,
*4 "[I]f you had thought he was dead when he was outside on the grass there at the end of the struggle, would you have tied him up?" Monlyn responded, "No. If he had been unconscious, I would never have tied him up." Based on the medical examiner's testimony that two of the blows would have killed the victim within minutes, and Monlyn's testimony that the victim was conscious when he tied him up, it is clear that any error as to the admission of the testimony in question would have been clearly harmless.
Monlyn's second claim is also meritless. Although the medical examiner testified that all of the wounds were blunt trauma injury wounds, Monlyn claimed during direct examination that he bit the victim and had seen a mark on the victim's hand. The state asked about the bite on cross-examination, and Monlyn argues that the questioning was impermissible. We have said numerous times that the "appropriate subjects of inquiry and the extent of cross-examination are within the sound discretion of the trial court." Cruse v. State, 588 So.2d 983, 988 (Fla.1991). We find no abuse of discretion here, especially where Monlyn himself opened the door to the questioning by testifying as to the bite marks on direct.
We find no merit to Monlyn's third claim, that it was error not to grant a mistrial after the State asked Monlyn why he had not told anyone about fighting with the victim and whether he realized the victim would die without medical attention. When questioning Monlyn, the State ascertained that when he was first read the warrant charging him with the murder of Watson, Monlyn denied any knowledge of the crime. The State then asked the following question: "Well, you didn't say, `Well, I got into a scuffle with a fellow. I don't know his name, and I hit him over the head a few times.'" The court sustained the defense objection to the statement, cautioning that it could be interpreted by the jury to suggest a duty on Monlyn's part. A few minutes later, the following testimony was heard:
Q. Mr. Monlyn, I believe you indicated that when you left there, you didn't realize how badly Mr. Watson was hurt.
A. I didn't know how bad he was hurt.
Q. So you didn't realize that unless he received medical treatment that he would die?
A. No. When I first known it 
At this point, the defense again objected. The court held that the form of the question was improper, but that the state was entitled to ask for Monlyn's opinion as to the victim's medical condition. The court again denied a motion for mistrial, ruling that the question  in rephrased form  was permissible. We see no error here. A "trial judge has wide discretion to determine the permissible scope of cross-examination," Bryan v. State, 533 So.2d 744, 750 (Fla.1988), and we find no abuse of discretion in the court's denial of the motions for mistrial. Monlyn initially denied knowledge of the victim and the crime because he said that he was asked about a "murder" and he did not know then that his victim was dead. It was therefore relevant on cross-examination to ask about Monlyn's understanding of the seriousness of the injuries with which he left Watson.
Monlyn's fourth argument, that it was error to admit testimony of the victim's wife that the victim usually carried several hundred dollars in cash, was not preserved for review by objection at trial.
There is no merit to Monlyn's fifth claim, that it was error to deny the motion for mistrial during the State's guilt-phase closing argument. Monlyn objected to the following statement by the state: "Well, I submit to you that he would have done Alton Watson a big favor if he had shot him. It would certainly have been a less painful death." The defense argued that the statement was merely inflammatory and not a proper comment on the evidence. The State replied that the defense had introduced evidence of the presence of two shotguns, presumably for the purpose of showing that Monlyn could have shot the victim if he intended to kill him, and that the statement was therefore a proper comment on the evidence. The court denied the motion for mistrial, and later said: "I think it's a fair comment on the evidence, based on the defendant's testimony and the opening statements of both sides and a reasonable view *5 and interpretation of the evidence." We find no abuse of discretion in denying the motion. Monlyn introduced evidence that there were shotguns available, so it was not improper for the state to comment on Monlyn's choice of method in committing the murder.
Issue six is also without merit: Monlyn argues that it was error to admit testimony by Johnny Craddock regarding statements Monlyn made before the homicides. Craddock testified that on the day before Monlyn escaped, Monlyn told him he was going to escape from jail, get a shotgun, and kill the first person he saw who had a car. The court denied the pretrial motion to suppress the statement. Monlyn argues that the statement was too remote in time to be admissible without a "detailed study of the record" by this Court, citing Jones v. State, 440 So.2d 570 (Fla.1983). After review of the record, we find no error in allowing the testimony. Craddock said the statement was made the day before Monlyn escaped. This is exactly the kind of evidence contemplated by section 90.803(3)(a)2, Florida Statutes (1995), as satisfying the state of mind exception to explain subsequent conduct.[1]
We find no merit to Monlyn's seventh argument, that the judge erred in refusing to give the requested circumstantial evidence instruction. Monlyn requested an instruction which had previously been included in the standard jury instructions but which had since been removed and left to the judge's discretion. The judge heard argument on this issue from Monlyn and from the State. Monlyn's brief recognizes that no appellate courts have reversed a trial court's refusal to give the requested instruction. We have in fact expressly approved courts which have exercised their discretion and not given the instruction:
In In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla.1981), we found the instruction on circumstantial evidence to be unnecessary and deleted it from the standard instructions. A trial court can, of course, give such an instruction if, in the court's discretion, it finds it necessary due to the particular facts of any case. Williams v. State, 437 So.2d 133 (Fla.1983); Standard Jury Instructions in Criminal Cases. The trial court did not find the circumstantial evidence instruction necessary in this case, and we find no abuse of discretion in his refusal to give such an instruction.
Rembert v. State, 445 So.2d 337, 339 (Fla. 1984). We find no abuse of discretion in refusing to give the requested instruction.
Monlyn's eighth argument, that the standard instruction on reasonable doubt is unconstitutional, is meritless. We have rejected constitutional challenges to this instruction numerous times. See, e.g., Henyard v. State, 689 So.2d 239, 245 n. 3 (Fla.1996); Spencer v. State, 645 So.2d 377, 382 (Fla.1994); Esty v. State, 642 So.2d 1074, 1078-79 (Fla.1994), cert. denied, 514 U.S. 1027, 115 S.Ct. 1380, 131 L.Ed.2d 234 (1995); Brown v. State, 565 So.2d 304, 307 (Fla.1990).
We consider Monlyn's tenth and eleventh issues together: he argues that an unconstitutional CCP instruction was given and that it was error both to instruct on and find the CCP aggravating circumstance. The instruction given was the standard jury instruction we invalidated in Jackson v. State, 648 So.2d 85 (Fla.1994). However, we have held that the aggravator can still stand where the facts of the case establish that the killing was CCP under any definition. See, e.g., Reese v. State, 694 So.2d 678 (Fla.1997); Larzelere v. State, 676 So.2d 394 (Fla.), cert. *6 denied, ___ U.S. ___, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). The sentencing order explicitly sets out the facts supporting the aggravator. The court found that Monlyn told others in prison that when he got out he was going to kill the victim; told Johnny Craddock that he was going to escape, get his shotgun, kill the first person he saw, steal the person's vehicle, and leave the area; concealed himself in the victim's barn and waited for him; and then kidnapped and murdered the victim and stole his truck. This provides ample evidence of heightened premeditation; evidence of a careful plan or prearranged design; evidence that Monlyn killed the victim after cool, calm reflection; and no pretense of moral or legal justification. See Jackson, 648 So.2d at 89. Because of this, the erroneous instruction was harmless. We find no error either in instructing on or finding CCP, and we find no reversible error in using the unconstitutional instruction.
In issue eleven, Monlyn argues that the instruction on the heinous, atrocious, or cruel aggravating circumstance was unconstitutional. This argument is without merit. We have approved this instruction on numerous occasions. See, e.g., Geralds v. State, 674 So.2d 96 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996); Merck v. State, 664 So.2d 939, 943 (Fla.1995); Hall v. State, 614 So.2d 473, 478 (Fla.1993)
Monlyn submitted a proposed instruction regarding mitigation; in his twelfth argument he claims that the court erred in giving the standard jury instruction on mitigation. Although Monlyn did not object when the standard mitigation instruction was discussed at the charge conference or when it was read to the jury. Monlyn did file proposed written instructions, and therefore preserved this issue for appellate review. See Hartley v. State, 686 So.2d 1316, 1322 (Fla.1996), cert. denied, ___ U.S. ___, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997); Crump v. State, 654 So.2d 545, 548 (Fla.1995); Walls v. State, 641 So.2d 381, 387 (Fla.1994). However, we find no error in giving the standard instruction. We have held that the standard instruction was sufficient. See, e.g., Jones v. State, 612 So.2d 1370, 1375 (Fla.1992). This issue is meritless.
Finally, Monlyn argues that it was error for the court to deny his request to instruct the jury against doubling the pecuniary gain and during the course of an enumerated felony aggravators. He claims that although the judge found that the murder had been committed in the course of a kidnapping and a robbery, the jury had no guidance to keep them from doubling.
We have held that it is proper for a trial court to give a special instruction warning the jury against improper doubling if such an instruction is requested by the defendant. See Castro v. State, 597 So.2d 259 (Fla. 1992). Thus, in the present case, it was error for the trial court to deny Monlyn's request to give this special instruction. However, we find this error to be harmless. It is true that when the only underlying felony of a murder is robbery, the aggravators of committed for pecuniary gain and committed during the course of an enumerated felony cannot be doubled and must be treated as one. See, e.g., White v. State, 403 So.2d 331 (Fla. 1981); Provence v. State, 337 So.2d 783 (Fla.1976). However, the facts of this case established that the murder was committed while Monlyn was engaged in the commission of both robbery and kidnapping. The facts that established the kidnapping were explicitly set out in the sentencing order.
During the course of the murder the Defendant kidnapped the victim by binding and gagging him. He also [dragged] the victim's body into the barn.
Thus, no impermissible doubling could have occurred by either the jury or the judge. Therefore, we find that no relief is warranted on this issue.
Accordingly, we affirm the convictions and the sentence of death.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The section provides, in relevant part:

90.803 Hearsay exceptions; availability of declarant immaterial.  The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
....
(3) THEN-EXISTING MENTAL, EMOTIONAL, OR PHYSICAL CONDITION. 
(a) A statement of the declarant's then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to: ...
2. Prove or explain acts of subsequent conduct of the declarant.
§ 90.803(3)(a)2, Fla. Stat. (1995).