894 So.2d 832 (2004)
Broderick W. MONLYN, Appellant,
v.
STATE of Florida, Appellee.
Broderick W. Monlyn, Petitioner,
v.
James V. Crosby, Respondent.
No. SC02-1729, SC03-1757.
Supreme Court of Florida.
December 2, 2004.
Rehearing Denied February 11, 2005.
*834 Baya Harrison, III, Monticello, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Charmaine M. Millsaps and Carolyn M. Snurkowski, Assistant Attorneys General, Tallahassee, for Appellee/Respondent.
PER CURIAM.
Broderick Monlyn appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the lower court's order and deny Monlyn's habeas petition.

I. FACTS
In October 1992 Monlyn escaped from prison and hid for two nights in his neighbor Alton Watson's barn. On the morning of October 8, he confronted Watson, severely beat him, tied and gagged him, took his wallet, and escaped in his truck. Monlyn hid Watson inside the barn, where he died of his wounds. Monlyn was convicted in November 1993 of first-degree murder, armed robbery, and armed kidnapping. After a unanimous jury recommendation, he was sentenced to death. The trial court found five aggravating factors, no statutory mitigation, and three nonstatutory mitigating factors.[1] On appeal, this Court affirmed, denying relief on each of the thirteen issues raised. Monlyn v. State, 705 So.2d 1, 3 (Fla.1997), cert. denied, 524 U.S. 957, 118 S.Ct. 2378, 141 L.Ed.2d 745 (1998).
Subsequently, Monlyn filed a timely motion and later an amended motion for postconviction relief.[2] Following a Huff[3] hearing, *835 the trial court held an evidentiary hearing on selected issues. The court then issued an order denying relief. In this appeal from denial of his postconviction motion, Monlyn raises only the following issues: (1) that counsel was ineffective for (a) failing to preserve for review the admissibility of habit testimony, (b) failing to elicit testimony regarding the robbery, (c) failing to advise appellant of his right to testify at the penalty phase, and (d) the cumulative effect of these errors; and (2) that the trial court erred by failing to rule on two of Monlyn's postconviction claims. We address these issues in order and then address Monlyn's habeas petition.

II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court established a two-pronged standard for determining whether counsel provided legally ineffective assistance. A defendant must point to specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. Second, the defendant also must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. Claims of ineffective assistance of counsel present mixed questions of law and fact subject to plenary review. Occhicone v. State, 768 So.2d 1037, 1045 (Fla.2000). Thus, this Court independently reviews the trial court's legal conclusions and defers to the trial court's findings of fact.

A. Monlyn's Claim Regarding Habit Testimony
Monlyn first contends that counsel failed to object to inadmissible habit testimony and that but for this error he probably would not have been convicted of first-degree murder or robbery and would not have been sentenced to death.[4] At trial, the victim's widow testified that although she did not know exactly how much money her husband had in his wallet on the day he was murdered, he probably had between two and three hundred dollars, including a one-hundred dollar bill he kept in a hidden compartment. Monlyn claimed the wallet contained no cash. We need not determine whether the widow's testimony was erroneously admitted because we hold that Monlyn was not prejudiced by its admission.
Even if the habit evidence were erroneously admitted, the trial court correctly found that the crime of robbery was established in this case. *836 Section 812.13(1), Florida Statutes (Supp.1992), defines the crime of robbery as
the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property when in the course of the taking there is the use of force, violence, assault, or putting in fear.
The evidence at trial showed that after Monlyn beat the victim into submission, he took Watson's wallet with the intent to take any cash it might contain and then, after rifling through it, threw it away. Thus, competent, substantial evidence supports the robbery conviction even if no cash was actually found in the victim's wallet. Further, ample evidence other than the widow's testimony showed that the wallet did contain cash. Witnesses testified that before the murder, including the evening before, Monlyn expressed a plan to rob Watson of his money and truck, and Monlyn testified that he took the wallet with the intent to rob Watson. Monlyn only had a few dollars in quarters when he escaped from prison, but when he arrived in Lake City shortly after the murder, he admitted that he told his former girlfriend that he had bought the bicycle he was riding for $35 and had approximately $200. When she asked him where he got the money, he responded that "for times like this, you just improvise." In addition, when he was arrested the day after the murder, he had more money on him than when he escaped from prison.
Finally, Monlyn was charged with robbery in the alternative  currency or Watson's truck. The evidence at trial showed his prior intent to steal the truck, and Monlyn admitted, and the evidence showed, that Monlyn took the truck and drove it from Madison to Lake City, where he abandoned it.

B. Monlyn's Claim Regarding the Money in the Victim's Wallet
Monlyn claims that counsel was ineffective for failing to elicit testimony at trial that after the victim's wallet was recovered from the crime scene, an FDLE analyst found a one-hundred dollar bill hidden inside it. He also asserts error in counsel's failure to object to the argument that no money was found in the victim's wallet. At the evidentiary hearing, Monlyn's trial counsel admitted that he knew about the hidden money but had overlooked it at trial. He considered the amount of cash taken from the wallet to be of no significance in light of Monlyn's own testimony about the robbery. We agree with the trial court that Monlyn failed to meet the Strickland requirements. As we explained above, the robbery was complete in this case with Monlyn's taking of the victim's wallet. In addition, ample evidence demonstrated that Monlyn did take cash from the victim. Moreover, robbery was charged in the alternative, and the evidence shows that Monlyn robbed the victim of his truck.
Monlyn next contends that the robbery conviction fails, along with the felony murder conviction, if it is based solely on his taking of the victim's truck. He relies on cases such as Knowles v. State, 632 So.2d 62 (Fla.1993), where this Court struck the aggravator that the murder was committed in the course of a robbery because the taking of the vehicle in that case could have been an afterthought. Unlike the situation in Knowles, however, Monlyn was charged with and convicted of robbery, and the evidence at trial showed that he planned to and did unlawfully rob the victim of his truck, abandoning it some fifty miles away. Therefore, Monlyn's robbery conviction, felony murder conviction, *837 and the aggravating factor that the murder was committed in the course of a robbery are all supported by competent, substantial evidence.
Finally, Monlyn claims that because a general verdict form was used, there is no way to determine on which theory the jury based its verdict, and that the robbery basis is invalid because there is insufficient evidence to support it. This claim, too, fails. First, as discussed above, the felony murder conviction rests firmly on either or both the robbery of the wallet or of the truck. Second, his reliance on Fitzpatrick v. State, 859 So.2d 486 (Fla.2003), is misplaced. In Fitzpatrick we invoked the principle that "a general verdict is invalid when it rests on multiple bases, one of which is legally inadequate" and reversed for new trial because the jury had been given an erroneous burglary instruction. Id. at 490 (emphasis added) (citing Yates v. United States, 354 U.S. 298, 312-13, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Thus, the verdict in the case could have been based on a legally unsupportable theory. Monlyn's claim is different; he argues a factual or evidentiary insufficiency. As we explained in Fitzpatrick, claims of legal and factual insufficiency are not synonymous, and reversal is not required in the latter instance. 859 So.2d at 491 (citing Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). Thus, even if competent, substantial evidence did not support robbery of the wallet, it does support robbery of the truck, and reversal is not required. And even if Monlyn's felony murder conviction were not supported by the robbery of the wallet or the truck, competent, substantial evidence supports the kidnapping conviction on which the felony murder charge was alternatively based. See Morrison v. State, 818 So.2d 432, 453-54 (Fla.2002) (holding that even if evidence did not support premeditated murder and one of the felony murder bases, the conviction could be affirmed if one of the bases for felony murder was supported by competent, substantial evidence), cert. denied, 537 U.S. 957, 123 S.Ct. 406, 154 L.Ed.2d 308 (2002).

C. Monlyn's Claim Regarding His Right to Testify
Monlyn claims that counsel was ineffective for failing to advise him that he could testify in his own behalf during the penalty phase. At the evidentiary hearing, Monlyn testified that although he testified in the guilt phase of trial, counsel did not inform him of this right to testify during the penalty phase. He said that he would have testified that he was "sorry for what happened" and that he was just "in the wrong place at the wrong time." Monlyn's trial counsel testified that he had no specific recollection of advising Monlyn. At the time of the trial, however, counsel had practiced law for twenty years and had served as counsel to murder defendants in at least fifty cases, approximately ten of which were death penalty cases. He said that his standard practice was to discuss the right with the client "in each and every case" and that the decision to testify was the client's. Asked if he "probably" followed his practice in this case, counsel responded, "Not probably. I did it." The lower court found, as a matter of fact, that Monlyn was advised of his right to testify and that the proposed remorse testimony would not have resulted in a life recommendation.
To establish this claim, Monlyn must meet both prongs of Strickland. Oisorio v. State, 676 So.2d 1363, 1364-65 (Fla.1996) (holding that to succeed in an ineffectiveness claim that trial counsel interfered with defendant's right to testify, defendant must meet both prongs of *838 Strickland). He has failed as to both. The trial court's finding, based on trial counsel's unswerving testimony, that counsel always advised clients of this right and that he did so in this case, is supported by competent, substantial evidence. See Roberts v. State, 840 So.2d 962, 973 (Fla.2002) ("Findings on the credibility of evidence by a lower court are not overturned if supported by competent, substantial evidence."); accord Zakrzewski v. State, 866 So.2d 688, 696 (Fla.2003) (citing Roberts and, where defendant's and counsel's testimony conflicted, upholding the trial court finding that counsel was credible).
Further, Monlyn has shown no prejudice. Monlyn testified during the guilt phase that he did not intend to kill the victim and that he felt "bad" about it. He testified at the evidentiary hearing that he was "just in the wrong place at the wrong time." Such testimony does not reflect remorse and appears to be an attempt to minimize responsibility. Further, Monlyn's testimony stands in direct contravention of the trial testimony presented to the jury that Monlyn planned to rob or kill the victim, or both, and Monlyn's own trial testimony that he chose to hide out in the victim's barn for two nights after he escaped from prison. The evidence showed that he beat the victim with such severity  inflicting over thirty blunt injury wounds  that the victim died after Monlyn tied, gagged, and hid him. Monlyn left the victim to die without seeking any help. The jury unanimously recommended death, and the trial court found five aggravating circumstances, including two of the most serious  that the crime was especially heinous, atrocious, or cruel, and that it was cold, calculated, and premeditated. See Larkins v. State, 739 So.2d 90, 95 (Fla.1999) (stating that "[HAC and CCP] are two of the most serious aggravators set out in the statutory sentencing scheme"). The trial court found no statutory mitigation and only three nonstatutory mitigating factors. Thus, no reasonable probability exists that the outcome of the penalty phase would have been different had Monlyn testified.

D. Monlyn's Claim of Cumulative Error
Because Monlyn has not satisfied the Strickland standard as to the foregoing claims, he has not demonstrated any cumulative error or prejudice. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); Vining v. State, 827 So.2d 201, 219 (Fla.2002) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.").

III. THE TRIAL COURT'S FAILURE TO RULE
Monlyn contends that because the trial court failed to rule on two of his claims, we must remand to the trial court for their consideration. The record shows that the parties agreed that the issues could be decided without an evidentiary hearing and that the lower court failed to rule on them. Remand, however, is not necessary in this case because both claims are procedurally barred.
In one claim Monlyn alleged that the jury was improperly instructed on the pecuniary gain aggravator. This claim should have been raised on direct appeal. See State v. Delva, 575 So.2d 643, 644 (Fla.1991) (explaining that jury instructions "are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred"). In his other claim, Monlyn raised the same issue regarding the instruction on the CCP aggravator *839 and his requested instruction on the improper doubling of two aggravators that he raised in his direct appeal. Thus, this Court already has expressly addressed the claims and denied relief. 705 So.2d at 5-6. Accordingly, because both claims are legally barred, we find no need to remand for the trial court to consider them.

IV. THE HABEAS PETITION
In his petition for writ of habeas corpus, Monlyn argues that under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Florida's death penalty scheme is unconstitutional and that the Ring decision applies retroactively to him. In Ring, the Court held that, other than the fact of a prior conviction, the jury must find the facts that would render the defendant eligible for the death penalty. Monlyn was convicted in 1993 of first-degree murder, armed robbery, and armed kidnapping, and the jury unanimously recommended the death penalty.
We have previously rejected each of the claims Monlyn raises in his petition. First, we have held that under Ring, the prior violent felony aggravator is exempt from Ring. See, e.g., Belcher v. State, 851 So.2d 678, 685 (Fla.) (holding the prior violent felony aggravator finding is exempt from Ring), cert. denied, 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003). In addition, another aggravating factor in this case was that the murder was committed in the course of a robbery or kidnapping, and the jury convicted Monlyn of both robbery and kidnapping during the guilt phase. See Fennie v. State, 855 So.2d 597 (Fla.2003) (denying postconviction Ring claim and noting that jury unanimously recommended death and one aggravator was that murder was committed in course of a kidnapping where defendant was also convicted of kidnapping), cert. denied, 541 U.S. 975, 124 S.Ct. 1877, 158 L.Ed.2d 471 (2004). We also have held that the jury is not required unanimously to specify each aggravator found. Duest v. State, 855 So.2d 33, 48-49 (Fla.2003) (rejecting a claim that the jury must unanimously specify each aggravator found), cert. denied, 541 U.S. 993, 124 S.Ct. 2023, 158 L.Ed.2d 500 (2004). Finally, because the jury in Monlyn's case returned a unanimous recommendation of death, he lacks standing to assert any error regarding lack of jury unanimity. See Belcher, 851 So.2d at 685 (rejecting the claim that the death penalty statute's failure to require that the jury render a unanimous, binding sentencing recommendation violates Ring).

V. CONCLUSION
In light of the foregoing analysis, we affirm the lower court's denial of postconviction relief and deny Monlyn's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
CANTERO, J., concurs with an opinion, in which WELLS and BELL, JJ., concur.
PARIENTE, C.J., concurs specially with an opinion, in which QUINCE, J., concurs.
ANSTEAD, J., concurs in result only.
CANTERO, J., concurring.
I concur in the majority opinion. I would specifically address, however, Monlyn's contention that the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), applies retroactively. I would hold, for the reasons stated in my specially concurring opinion in Windom v. *840 State, 886 So.2d 915 (Fla. 2004), that it does not.
The United States Supreme Court recently addressed the question of Ring's retroactivity in federal habeas proceedings. In Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the Court examined its holding in Ring under the federal retroactivity analysis outlined in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[5] The Court held that the rule announced in Ring was procedural  not substantive  and was not a "watershed" rule implicating the fundamental fairness or accuracy of the criminal proceeding such that retroactive application to final cases was required. Summerlin, ___ U.S. at ___, 124 S.Ct. at 2526. The Court emphasized that Ring is not about whether judges or juries are more accurate factfinders. Rather, the issue in Ring was a simple question of what procedure is required by the Sixth Amendment  i.e., who decides. Summerlin, 124 S.Ct. at 2525. The Court also compared its nonretroactivity decision regarding Ring with its decision in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), in the which the Court refused retroactively to apply Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which held that the right to jury trial guaranteed in the Sixth Amendment applied to the States. The Court concluded that "[i]f under DeStefano a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." Summerlin, 124 S.Ct. at 2526. Thus, although the Supreme Court uses a different retroactivity analysis, its conclusion that the new rule announced in Ring does not call into question the fairness of penalty phase proceedings in death penalty cases is persuasive.
I recognize that this Court is not bound by the Supreme Court's nonretroactivity decision in Summerlin. That decision is binding only on federal courts in applying the federal habeas corpus statute. See, e.g., Cowell v. Leapley, 458 N.W.2d 514, 517 (S.D.1990) (stating that the federal government controls access to habeas corpus and each state controls how it provides access to postconviction relief); Daniels v. State, 561 N.E.2d 487, 489 (Ind.1990) (holding that the new rule announced in a U.S. Supreme Court case did not apply retroactively in state postconviction cases). Nevertheless, because the Supreme Court has plainly spoken on the issue of Ring's retroactivity and because Monlyn raises this issue, as a Court we should finally decide whether Ring applies retroactively in Florida.
This case also provides us with the opportunity directly to address whether this Court should continue to use the retroactivity analysis it announced in Witt v. State, 387 So.2d 922, 925 (Fla.1980), or whether we should instead adopt the Teague analysis employed by the federal courts. In response to Monlyn's contention that Ring should be applied retroactively to final cases, the State not only argued against Ring's retroactivity, but also urged this Court to abandon the Witt retroactivity analysis in favor of Teague. In my opinion in Windom, I analyzed the question under both Witt and Teague and concluded that under either standard Ring is not retroactive. I also urged the Court to adopt the Teague analysis with respect to the constitutional decisions of the United States Supreme Court. In accordance with my Windom concurrence, therefore, I would hold both that Ring does not apply *841 retroactively and that the Teague retroactivity analysis applies to United States Supreme Court cases adopting new constitutional rules.
WELLS and BELL, JJ., concur.
PARIENTE, C.J., specially concurring.
I concur in the majority opinion in all respects, including its discussion of Monlyn's claim pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Further, I conclude that in light of the United States Supreme Court decision in Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), Ring's holding that a jury rather than a judge must find a death-qualifying aggravating circumstance does not apply retroactively to cases on postconviction review under the test of Witt v. State, 387 So.2d 922 (Fla.1980).
As a United States Supreme Court decision firmly grounded in the constitutional right of trial by jury, Ring meets the first two criteria for retroactive application under Witt. On the remaining consideration, whether the decision has "fundamental significance," this Court stated in Witt that "only major constitutional changes of law will be cognizable in [collateral proceedings]." Id. at 929. The Court contrasted "jurisprudential upheavals" warranting retroactivity with "evolutionary refinements in the criminal law [that afford] new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments." Id.
In determining whether Ring is retroactive under Witt, I would defer to the United States Supreme Court's characterization of Ring in Summerlin. The Court in Summerlin held that Ring is not retroactive under the test of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In reaching that conclusion, the Court stated that Ring affects procedural rather than substantive rights, because it regulates the manner in which culpability is determined rather than alter the range of conduct or class of persons that the law punishes. See Summerlin, 124 S.Ct. at 2523. The Court also determined that Ring does not change the elements of the offense of murder punishable by death, and does not greatly enhance the fairness or accuracy of death penalty proceedings. See id. at 2524-26. Regarding the latter concern, the Court noted that because the burden of proof in Arizona for aggravating factors found by the trial court was "beyond a reasonable doubt," the requirement of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that facts authorizing an increased sentence be found beyond a reasonable doubt was not in issue in Ring. See Summerlin, 124 S.Ct. at 2522 n. 1. Florida law also requires that aggravating factors in death penalty cases be established beyond a reasonable doubt. See Rogers v. State, 783 So.2d 980, 992-93 (Fla.2001).
Applying Witt's retroactivity test to the United States Supreme Court's observations in Summerlin, I conclude that Ring is not among the "fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding." Witt, 387 So.2d at 929. As a decision that bears only on the procedure in which eligibility for the death penalty is determined without altering the burden of proof or otherwise increasing the accuracy or fairness of the proceedings, Ring is an evolutionary refinement in capital jurisprudence.
Because I reach this conclusion under Florida's longstanding Witt test, I would *842 not address whether this Court should instead adopt the Teague standard for determining the retroactivity of United States Supreme Court decisions, as Justice Cantero urges.
QUINCE, J., concurs.
NOTES
[1] The aggravating factors were as follows: (1) the murder was especially heinous, atrocious, or cruel; (2) the murder was cold, calculated, and premeditated; (3) Monlyn had a prior violent felony conviction; (4) the murder was committed in the course of an attempt to commit robbery or kidnapping; (5) the murder was committed for pecuniary gain. The nonstatutory mitigating factors were Monlyn's affection for his family, his aid to others, and his good adjustment to prison life.
[2] Monlyn raised twelve grounds, eight of which asserted that counsel was ineffective for (1) failing to challenge a state witness's competency to testify, (2) failing to object to habit testimony, (3) failing to elicit testimony regarding the victim's wallet, (4) failing to object to the admission of DNA evidence, (5) failing to call Monlyn's cellmate to testify, (6) failing to object to the prior violent felony aggravator, (7) failing to introduce Monlyn's remorse as mitigation in the penalty phase, and (8) failing to inform the defendant of his right to testify in the penalty phase. He also claimed the following errors: (9) denial of the right to adversarial testing regarding the pecuniary gain aggravator, (10) denial of the right to testify in the penalty phase, (11) unconstitutionality of the death sentence because jury instructions did not define aggravators with the requisite specificity, and (12) denial of the right to adversarial testing during the penalty phase.
[3] See Huff v. State, 622 So.2d 982, 983 (Fla.1993) (holding that when a defendant sentenced to death files a postconviction motion, the judge must hold a hearing to determine whether any of the claims require an evidentiary hearing and to hear legal argument related to the motion).
[4] Monlyn raised the question of the admissibility of the habit testimony in his direct appeal, but because the claim was not preserved, we refused to address it. 705 So.2d at 4.
[5] Although Teague was a plurality opinion, the Supreme Court adopted its approach to retroactivity in Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).