CANADY, J.,
concurring in part and dissenting in part.
I agree with the decision to affirm the denial of relief on Mosley’s guilt phase claims. But I strongly disagree with the decision to vacate Mosley’s death sentence and to remand for a new penalty phase. Based on the jury’s verdict establishing the existence of an aggravator, I would conclude that there was no Hurst v. Florida, - U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), violation. I would also conclude that in any event Hurst v. Florida should not be given retroactive application under the analysis required by Witt v. State, 387 So.2d 922 (1980). The denial of retroactive application ineluctably follows from this Court’s decision in Johnson v. State, 904 So.2d 400, 412 (Fla. 2005), “hold[ing] that Ring[ v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002),] does not apply retroactively in Florida.” I would also reject Mosley’s other penalty phase claims. The postconviction court’s denial of all relief should be affirmed.
I.
I adhere to my view that Hurst v. Florida-like Ring — only requires that the jury find the existence of an aggravator that renders a defendant eligible to be considered for death. See Hurst v. State, 202 So.3d 40 (Fla. 2016) (Canady, J., dissenting). The majority recognizes that its decision regarding retroactivity involves “de-termin[ing] whether to deny relief to those defendants who were sentenced to death under an invalid statute based solely on the United States Supreme Court’s delay in overruling Hildwin[ v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam),] and Spaziano[ v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)].” Majority op. at 1280. But the majority continues to ignore the limit articulated by the Supreme Court on its overruling of Hildwin and Spaziano. Hurst v. Florida’s overruling of Spaziano and Hildwin expressly identifies the absence of a jury finding of an aggravator as the constitutional flaw in Florida’s death penalty statute: “The decisions are overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.” Hurst v. Florida, 136 S.Ct. at 624. The majority provides no explanation of how the expansive holding of Hurst v. State can be reconciled with the narrow focus of Hurst v. Florida. The majority fails to offer such an explanation because no such explanation is possible. The majority’s “opinion in Hurst[ v. State], interpreting the meaning of Hurst v. Florida as applied to Florida’s capital sentencing scheme,” majority op. at 1274, thus offers an “interpretation” that resolutely ignores the core holding of Hurst v. Florida.
II.
In its analysis of retroactivity, the majority gives a wave-of-the-hand dismissal to the carefully reasoned decision in Johnson.[25] Our decision in Johnson followed the *1286 trajectory established by our earlier decision in Hughes v. State, 901 So.2d 837 (Fla. 2005), which applied a Witt analysis to conclude that the decision in Apprendi[26] —which unquestionably spawned both Ring and Hurst v. Florida-should not be applied retroactively. The majority acknowledges that “in holding our statute unconstitutional, the United States Supreme Court applied the exact reasoning of Ring to Florida’s death penalty sentencing scheme.” Majority op. at 1273. But the majority also asserts without explanation that in Johnson “we did not properly analyze the purpose of the new rule in Ring, which was to protect the fundamental right to a jury in determining each element of an offense.” Majority op. at 1276 (quoting Asay v. State, Nos. SC16-223, SC16-102, & SC16-628, 210 So.3d 1, 2016 WL 7406538 (slip op. issued Fla. Dec. 22, 2016) (plurality opinion)). The detailed reasoning of Johnson concerning “the purpose of the new rule” is rejected without any discussion of that reasoning. Indeed, the majority refuses to address any of the reasoning of Johnson — which held that Ring was an evolutionary refinement in the law and that all three prongs of the Stovall/Linklet-ter[27] three-part test weighed heavily against retroactive application of Ring. This is not the way any court should treat a carefully reasoned precedent.
Similarly, the majority omits any mention of Witt’s undergirding principle— which informed our decisions in Johnson and Hughes — that retroactive application is unwarranted “in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.” Witt, 387 So.2d at 929. In Hughes, focusing on this central element of the Witt framework, we explained the nature of the new rule announced in Apprendi:
Apprendi shifted certain fact-finding from judge to jury and “clarified and extended” the right to a jury trial to require the State to prove convictions beyond a reasonable doubt by applying the standard to certain factors affecting sentencing under certain conditions. United States v. Mora, 293 F.3d 1213, 1219 (10th Cir.), cert. denied, 537 U.S. 961, 123 S.Ct. 388, 154 L.Ed.2d 315 (2002). But Apprendi does not impugn the “very integrity of the fact-finding process” or present “the clear danger of convicting the innocent.” Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (quoting Linkletter, 381 U.S. at 639, 85 S.Ct. 1731).
Hughes, 901 So.2d at 844. In support of our conclusion that Ring should not be given retroactive application, we reached a similar conclusion in Johnson concerning the nature of the rule announced in Ring. See Johnson, 904 So.2d at 410.
The majority simply fails to consider whether the rule announced in Hurst v. Florida “cast[s] serious doubt on the veracity or integrity,” Witt, 387 So.2d at 929, *1287 of the many penalty phase proceedings that the majority now sweeps aside. The majority opinion will be searched in vain for any mention — much less an analysis— of the implications of the new rule for the “veracity or integrity” of those proceedings, which is an integral part of the Witt framework, and figures prominently in the evaluation of the purpose of a new rule under the first prong of our Witt analysis. Id.
Similarly, our retroactivity analysis here should be informed by Johnson’s categorization of Ring as an “evolutionary refinement” and thus a new rule that should not be given retroactive application under the Witt framework. Johnson, 904 So.2d at 405. In Witt we held that “evolutionary refinements in the criminal law” including new rules “affording new or different standards for ... procedural fairness ... do not compel an abridgement of the finality of judgments.” Witt, 387 So.2d at 929. In Hughes, we recognized that Apprendi had “announced an emerging right of procedural fairness that does not compel the disruption of final judgments.” Hughes, 901 So.2d at 844. And in Johnson we stated: “Ring was not a sudden or unforeseeable development in constitutional law; rather, it was ‘an evolutionary refinement in capital jurisprudence.’” Johnson, 904 So.2d at 405 (quoting Monlyn v. State, 894 So.2d 832, 841 (Fla. 2004) (Pariente, C.J., specially concurring)).
If Ring — which involved an application of the logic of Apprendi notwithstanding Apprendi’s disavowal of any application to capital sentencing — was an evolutionary refinement, it necessarily follows that Ring’s application in Hurst v. Florida, which according to the majority “applied the exact reasoning of Ring,” majority op. at 1273, also is an evolutionary refinement. The majority, of course, omits any mention of our conclusion in Johnson that Ring was an evolutionary refinement, since the majority gives no attention to the analysis contained in Johnson.
In Johnson, we highlighted Witt’s recognition that “once a conviction has been upheld on appeal, the State acquires a strong interest in finality.” Johnson, 904 So.2d at 407. As we stated in Witt: “The importance of finality in any justice system, including the criminal justice system, cannot be understated.” Witt, 387 So.2d at 925. But the majority here does not acknowledge the State’s strong interest in finality — an interest that is paralleled by the interest of victims’ families — in the postconviction context. The majority’s con-clusory deliverances on the three prongs of the Stovall/Linkletter test adopted in Witt give no consideration to the circumstances that we held in Johnson strongly weighed against thwarting the State’s interest in the finality of death sentences.
Admittedly, the scope of the holding in Hurst v. Florida goes beyond anything contemplated by the Johnson Court when it determined that Ring should not be applied retroactively. In Johnson we observed that Ring claims had “[ujsually ... failed because the sentence was supported by an aggravating factor found by a jury beyond a reasonable doubt, such as a prior violent felony conviction or a contemporaneous enumerated felony conviction” and stated that “[w]e could easily dispose of Johnson’s Ring claim in the same way because his death sentence was supported by an aggravating factor found by a jury beyond a reasonable doubt — namely, his prior convictions of two violent felonies.” Johnson, 904 So.2d at 406. As I have explained, that basis for resolving Ring claims remains a basis for resolving — that is, rejecting-Hurst v. Florida claims. But even under the broader “interpretation” of Hurst v. Florida adopted by the majority, Johnson’s analysis, of the three-part test *1288 still identifies the considerations that are relevant to determining whether retroactive effect should be given to a new rule defining the way the Sixth Amendment must be applied to penalty phase proceedings. Those considerations weigh decisively against retroactive application.
A.
The first prong of the test we employed in Witt focuses on “the purpose to be served” by the new rule. Johnson, 904 So.2d at 409 (citing Witt, 387 So.2d at 926). In Johnson, we analyzed this factor based on elements of the reasoning of the United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), which held for purposes of federal law that “Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review.” We specifically emphasized the “Supreme Court’s characterization of the purpose of Ring,” and stated that “[t]o the extent that the purpose of Ring is a factor in our own retroactivity test, a recent discussion of that purpose by the very Court that decided Ring is obviously worthy of our attention and deference.” Johnson, 904 So.2d at 410 n.4. We pointed out that “[t]he Supreme Court cautioned in Ring that its determination of who decides whether a defendant is eligible for the death penalty ‘does not turn on the relative rationality, fairness, or efficiency of potential factfinders,’ ” id. at 409-10 (quoting 536 U.S. at 607, 122 S.Ct. 2428), and that “[t]he Court subsequently stated in Summerlin that ‘for every argument why juries are more accurate factfin-ders, there is another why they are less accurate,’ ” id. at 410 (quoting 124 S.Ct. at 2525).
Based on the reasoning of Summerlin, we went on to state that “[t]he purpose of the new rule in Ring is to conform criminal procedure to the Sixth Amendment’s jury trial guarantee, and not to enhance the fairness or efficiency of death penalty procedures.” Id. We further relied on our decision “[i]n Williams v. State, 421 So.2d 512, 515 (Fla. 1982), [in which] we refused to apply a rule retroactively in part because it ‘did not involve an attack on the fairness of the trial.’ ” Id. We also invoked Witt’s statement that retroactive application is inappropriate “in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding,” id. (quoting Witt, 387 So.2d at 929), and determined that “Ring casts no such doubt,” id. We held that “[t]he first Witt factor therefore disfavors retroactive application.” Id.
In Summerlin, the Supreme Court also relied on the pre-Teague[28] retroactivity analysis in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (per curiam). Applying a test identical to the Witt three-part test, DeStefano denied retroactive effect to Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which held that the Sixth Amendment’s jury-trial guarantee was applicable to the States. Summerlin explained the reasoning of DeStefano concerning the purpose served by Duncan;
*1289 We noted [in DeStefano] that, although “the right to jury trial generally tends to prevent arbitrariness and repression^] ... ‘[w]e would not assert ... that every criminal trial — or any particular trial — held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.”’ 392 U.S., at 633-634, 88 S.Ct. 2093 (quoting Duncan, supra, at 158, 88 S.Ct. 1444). We concluded that “[t]he values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial.” 392 U.S., at 634, 88 S.Ct. 2093.
Summerlin, 542 U.S. at 357, 124 S.Ct. 2519 (second, third, and fourth alterations in original). Summerlin concluded that “[i]f under DeStefano a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how” the Sixth Amendment violation condemned in Ring could result in such “impermissibly inaccurate” proceedings. Id.; see also Washington v. State, 907 So.2d 512, 516 (Fla. 2005) (Lewis, J., concurring) (“[T]he purpose served by a new rule of law is a key factor in determining retroactivity in Florida, and the United States Supreme Court in DeS-tefano held that the purpose served by the jury-trial guarantee (‘to prevent arbitrariness and repression’) ‘favor[s] only prospective application’ of that guarantee to the states. Therefore, I cannot logically say that the purpose served by the jury fact-finding requirement of Apprendi and Ring favors a different treatment in this regard.” (second alteration in original) (footnotes omitted)).
The majority here quietly brushes all this aside — with no explanation of why the reasoning is either wrong or inapplicable— and delivers an analysis under which any new rule regarding the scope of the Sixth Amendment may be deemed to have a purpose that supports retroactive application.
B.
The second prong addresses “the extent of reliance on the prior rule.” Johnson, 904 So.2d at 409 (citing Witt, 387 So.2d at 926). In Johnson, we concluded that this factor “[l]ike the first factor ... weighs heavily against retroactive application of Ring” because “Florida has relied to an immeasurably large extent on its capital sentencing scheme.” Id. at 410. In Johnson we also emphasized that the State’s reliance on the precedents that upheld the validity of Florida’s death penalty statute was entirely reasonable: “Based on all of the information available at the time of Ring, Florida had every reason to believe that its capital sentencing scheme was constitutionally sound and worthy of reliance.” Id. at 411. The State continued to reasonably rely to “an immeasurably large extent,” id. at 410, on the undisturbed holdings of Hildwin and Spaziano throughout the entire fourteen-year period between the decision in Ring and the decision in Hurst v. Florida-a period in which both this Court and the Supreme Court time after time rejected claims challenging Florida’s death penalty statute under Ring.
The majority does not question the extent of the State’s reliance on Hildwin and Spaziano after Ring issued. Nor does the majority question the good faith of the State — or this Court — in its post-Ring reliance on those precedents. Instead, the majority changes the subject. The majority states that “[w]e now know after Hurst v. Florida that Florida’s capital sentencing statute was unconstitutional from the time that the United States Supreme Court decided Ring” and that “it is undeniable that Hurst v. Florida changed the calculus of the constitutionality of capital sentencing *1290 in this State.” Majority op. at 1281, Prom this, the majority concludes that the extent-of-relianee-on-the-prior-rule factor “weighs in favor of granting retroactive relief to the point of the issuance of Ring.” Majority op. at 1281. But this is a non sequitur. The fact that “Hurst v. Florida changed the calculus of the constitutionality of capital sentencing,” majority op. at 1281, in Florida has no bearing on. the extent of the State’s reliance on the old rule. Any case announcing a new rule necessarily “changefs] the calculus,” majority op. at 1281, of the applicable law. By. relying on this truism as the basis for, its analysis, the majority renders this prong of the Witt test meaningless.
C.
The third prong addresses “the effect that retroactive application of the new rule would have on the administration of justice.” Johnson, 904 So.2d at 409 (citing Witt, 387 So.2d at 926). The, majority-errs in concluding that the “analytical lynchpin” of this factor “is whether holding a decision retroactive would have the effect of burdening ‘the judicial machinery.of our state, fiscally and intellectually, beyond any tolerable limit.’ ” Majority op. at 1281 (quoting Witt, 387 So.2d at 929-30). The majority suggests that this supposed “analytical lynchpin” is used “to distinguish between ‘jurisprudential upheavals’ ¿nd ‘evolutionary refinements.’” Majority op. at 1281-82 (quoting Witt, 387 So.2d at 929). From this the majority fashions a rule that the third prong will weigh against retroactive application only if the effect of the new rule will burden the administration of justice “beyond any tolerable limit,” Majority op. at 1281 (quoting Witt, 387 So.2d at 930). But this twists the reasoning of Witt beyond recognition.
The point Witt actually makes is that frequently occurring “evolutionary refinements in the criminal law” — as opposed to rare “jurisprudential upheavals” like Gideon v. Wainwright[29]-should not be given retroactive effect because doing so would strain the system of justice “beyond any tolerable limit.” Witt, 387 So.2d at 929-30. From this sensible point concerning the drastic impact of giving retroactive application to all evolutionary refinements— which by their nature occur with great frequency — the majority makes an unreasoned analytical hop to the wholly unwarranted conclusion that concerns about avoiding undue strains on the administration of justice come into play only when retroactive application will strain the system of justice “beyond any tolerable limit.” Majority op. at 1281 (quoting Witt, 387 So.2d at 930). In-an exercise of fallacious reasoning, the majority thus turns an impact that is sufficient to count against retroactive application into an impact that is necessary to count against retroactive application. But even under the test fallaciously set up by the majority, the strain on the system of justice inflicted by giving retroactive effect to the majority’s misinterpretation of Hurst v. Florida is “beyond any tolerable limit.” Witt, 387 So.2d at 930.
In Johnson, we concluded that applying “Ring retroactively in Florida .,. would consume immense judicial resources without any corresponding benefit to the accuracy or reliability of penalty phase proceedings.” Johnson, 904 So.2d at 412. The same conclusion applies concerning retroactive application of Hurst v. Florida. While the system is processing new death cases, the system will also be burdened *1291 with new penalty phase proceedings for the vast majority of the death cases that became final after Ring issued in 2002. The difficulties involved in conducting new penalty phase proceedings for such a large number of cases involving murders committed over such an extended period of time truly beggars description. The impact on the system of justice — courts, prosecutors, and public defenders — will be enormous. Contrary to the majority’s suggestion, that impact is not rendered insignificant by the fact that giving full retro-activity would have a greater impact. This factor — as in Johnson — weighs strongly against retroactive application.
III.
I would also reject the majority’s reliance on James v. State, 615 So.2d 668 (Fla. 1993). First, James cannot be reconciled with the balancing process required by Witt. The majority itself recognizes that “balancing fairness versus finality is the essence of a Witt retroactivity analysis.” Majority op. at 1276 (emphasis added). But in applying James, the majority forsakes the “essence” of retroactivity analysis by jettisoning any thought of the State’s interest in finality — no matter how weighty that interest might be. Although James applied a new rule retroactively, it gave no consideration to the framework for retro-activity established in Witt. James said not one word about Witt. In ignoring Witt, James totally disregarded the State’s strong interest in finality in the postconviction context. A decision that simply ignored existing precedent will rarely be entitled to any more weight as a precedent than the weight it afforded to the authority it ignored.
Second, the supposed rule of “fundamental unfairness” articulated in James is deeply problematic — if not entirely incoherent — when judged by its own terms. If counsel accepted our decisions at face value and relied on the United States Supreme Court’s repeated rejection of Ring claims, the client loses under James. But if counsel raised claims that had been consistently rejected, the client wins. This hardly comports with the notion of fundamental fairness. The concept of fundamental error is based on the recognition that some matters are so important that it is fundamentally unfair for the client to suffer as a result of counsel’s oversight. But James says that it is fundamentally fair for a defendant to suffer because counsel had insufficient foresight.
James should be abrogated.
IV.
The new rule articulated in Hurst v. Florida-which simply requires that the jury find an aggravator — is an evolutionary refinement in the law that does not cast doubt on the veracity or integrity of penalty phase proceedings resulting in death sentences that are now final. Nothing in our retroactivity jurisprudence warrants setting aside the State’s weighty interest in the finality of these sentences. The State’s reliance on the old rule — as articulated in Hildwin and Spaziano — was undeniably immense and entirely in good faith. Based on an indefensible misreading of Hurst v. Florida and a retroactivity analysis that leaves the Witt framework in tatters, the majority unjustifiably plunges the administration of the death penalty in Florida into turmoil that will undoubtedly extend for years. I strongly dissent from this badly flawed decision.
POLSTON, J., concurs.

. Prior to Johnson, various justices had expressed the view that Ring should not be given retroactive application. See, e.g., Monlyn v. State, 894 So.2d 832, 841 (Fla. 2004) *1286 (Pariente, C.J., specially concurring) (“Applying Witt's retroactivity test ... I conclude that Ring is not among the 'fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.' Witt, 387 So.2d at 929. As a decision that bears only on the procedure in which eligibility for the death penalty is determined without altering the burden of proof or otherwise increasing the accuracy or fairness of the proceedings, Ring is an evolutionary refinement in capital jurisprudence.” (citing Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004))).

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). I agree with Justice Polston that the framework established in Teague is more workable than Witt. See Asay v. State, Nos. SC16-223, SC16-102, & SC16-628, 210 So.3d 1, 2016 WL 7406538 (slip op. issued Fla. Dec. 22, 2016) (Polston, J., concurring); see also Johnson v. State, 904 So.2d 400, 413 (Fla. 2005) (Cantero, J., concurring) (explaining that this Court should apply the Teague standard when determining the retroactivity of United States Supreme Court decisions). But here, analysis under Witt is sufficient to resolve the retroactivity issue.

. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that each state must provide counsel to every inch-gent defendant charged with a felony at all critical stages of the proceeding).